IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **COUNCIL FOR UROLOGICAL INTERESTS**, | ) ) ) | |
| **Plaintiff**, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-02343-HHK |
| **MICHAEL O. LEAVITT**, Secretary of the Department of Health and Human Services, and **UNITED STATES OF AMERICA**, | ) ) ) ) | |
| **Defendants.** | ) ) | |

### DEFENDANTS' MOTION TO DISMISS

The defendants, Michael O. Leavitt, Secretary of Health and Human Services, and the United States of America, respectfully move this Court to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6) of those Rules.

The grounds in support of this motion are set out more fully in the accompanying memorandum.

Dated: June 16, 2008                        Respectfully submitted,

Of Counsel:                                 GREGORY G. KATSAS
                                            Acting Assistant Attorney General

THOMAS R. BARKER
Acting General Counsel                      JEFFREY A. TAYLOR
                                            United States Attorney

JANICE HOFFMAN
Associate General Counsel

                                               /s/ Joel McElvain
MARK D. POLSTON                             SHEILA M. LIEBER, Deputy Director
Deputy Associate General                    JOEL McELVAIN, Attorney, D.C. Bar # 448431
   Counsel for Litigation                   United States Department of Justice
                                            Civil Division, Federal Programs Branch
JOCELYN BEER                                20 Massachusetts Ave., NW, Room 7130
Attorney                                    Washington, D.C. 20001
Office of the General Counsel               Telephone:    (202) 514-2988
U.S. Department of Health                   Fax:          (202) 616-8202
   and Human Services                       Email:        Joel.L.McElvain@usdoj.gov

                                            *Attorneys for Defendants*

- 2 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**COUNCIL FOR UROLOGICAL**     )
**INTERESTS**,     )
    )
            **Plaintiff**,     )
    )
      v.     )     Case No. 1:07-cv-02343-HHK
    )
**MICHAEL O. LEAVITT**, Secretary of the     )
Department of Health and Human Services,     )
and **UNITED STATES OF AMERICA**,     )
    )
          **Defendants.**     )

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

The defendants, Michael O. Leavitt, Secretary of Health and Human Services, and the

United States of America, respectfully move this Court to dismiss the complaint for lack of

subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or,

in the alternative, for failure to state a claim pursuant to Rule 12(b)(6) of those Rules. The

plaintiff, the Council for Urological Interests (CUI), is an association of companies that provide

lithotripsy services to ambulatory surgical centers (ASCs). CUI disputes the methodology that

the Secretary has used to establish the payment rates that ASCs may recover for various

procedures, including lithotripsy, performed in such centers. In particular, CUI believes that the

Secretary should have established a higher payment rate for lithotripsy performed in ASCs. CUI

raises several challenges under the Administrative Procedure Act (APA) relating to the

Secretary's determination of that payment rate. Unfortunately for CUI, the Medicare Act

expressly precludes judicial review of this sort of a claim. Moreover, even if this statutory bar

did not apply, CUI's claim must fail because it has not complied (and could not comply) with the

Medicare Act's requirement that all claims relating to Medicare reimbursement first be presented

administratively.  Furthermore, CUI lacks standing to assert its claim, as the injury of which it complains – reduced payments to its members for lithotripsy services – turns on its payment arrangements with ASCs, and only indirectly (at best) on any action of the Secretary.  CUI attempts to avoid these jurisdictional barriers by recasting its claim as a constitutional one, asserting that the Medicare Act violates the anti-delegation doctrine by permitting the Secretary to establish payment rate schedules for procedures performed in ASCs.  This attempt also fails, as the Act easily satisfies the minimal requirements imposed by the anti-delegation doctrine.

## **Background**

### I.    **The Medicare Claims Process**

Title XVIII of the Social Security Act, commonly known as the Medicare Act, establishes a program of health insurance for the elderly and disabled.  42 U.S.C. § 1395 *et seq*. Medicare Part A pays for inpatient hospital services and other institutional care.  42 U.S.C. §§ 1395c to 1395i-5.  Part B is a supplemental program that pays for physician and outpatient services.  42 U.S.C. §§ 1395j to 1395w-4.  Generally, Medicare pays for 80 percent of the applicable Part B payment amount.  The remaining 20 percent is a "coinsurance amount" (or "copayment") for which the beneficiary is responsible.  *See* 42 U.S.C. §§ 1395*l*(a)(1), 1395cc(a)(2)(A).  A beneficiary who objects to the copayment amount charged for a particular service may seek review of that determination through the step-by-step administrative process outlined below.  42 C.F.R. § 405.924(b)(5).  A beneficiary may assign his claim for Medicare Part B reimbursement to the supplier who provided the service.  42 U.S.C. § 1395ff(b)(1)(C).  A beneficiary, however, generally may not assign such a claim to any other parties.  42 U.S.C. § 1395u(b)(6); *see* 42 C.F.R. § 424.80.

Initially, a claim for Part B reimbursement is submitted to a contractor, 42 U.S.C.

§ 1395u, which determines on behalf of the Secretary whether the claim should be paid. 42

U.S.C. § 1395ff(a)(1). If the beneficiary wishes to challenge the contractor's initial

determination, he must submit a request for a redetermination within 120 days of receiving the

initial determination. 42 U.S.C. § 1395ff(a)(3). Failure to meet this deadline renders the initial

determination final and unappealable. 42 U.S.C. § 1395ff(a)(3)(C)(i). If the beneficiary is

dissatisfied with the redetermination decision, he is entitled to reconsideration by a different

contractor, 42 U.S.C. § 1395ff(c)(2), a hearing before an administrative law judge, 42 U.S.C.

§ 1395ff(d)(1)(A), and an appeal to the Medicare Appeals Council of the Departmental Appeals

Board, 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. §§ 405.902, 405.1100-1140. The "final decision" of

the Secretary may then be challenged in district court under the Medicare Act, which sets forth

the scope of a court's jurisdiction and a plaintiff's cause of action for such claims. 42 U.S.C.

§ 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)). This Medicare appeals process is the

exclusive avenue available for challenging determinations regarding Part B claims. Federal-

question jurisdiction under 28 U.S.C. § 1331 is precluded. 42 U.S.C. § 1395ii (incorporating 42

U.S.C. § 405(h)).

## II.    Medicare Part B Reimbursement for Services Supplied by Ambulatory Surgical Centers

Ambulatory surgical centers, or ASCs, are facilities that provide for surgical procedures

on an outpatient basis. (Compl., ¶¶ 16-17.) ASCs are treated as "suppliers" of medical services

for purposes of reimbursement under Medicare Part B. 42 U.S.C. § 1395k(a)(2)(F)(i).

Accordingly, ASCs meeting the standards specified in the Medicare Act will qualify for payment

for services furnished in connection with certain surgical procedures that have been approved by

the Secretary for performance in such a facility.  *See id.*; *see also* 72 Fed. Reg. 66,580, 66,827 (Nov. 27, 2007).

Before 2003, Medicare established the reimbursable estimated allowances for ASC procedures by reference to surveys of the audited costs that the ASCs incurred in the performance of those procedures.  *See* 72 Fed. Reg. at 66,827.  Congress repealed that policy, and directed the Secretary to establish a revised ASC payment system, when it enacted the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), Pub. L. No. 108-173, 117 Stat. 2066 (2003).  Section 626(d) of the MMA directed the Government Accountability Office (GAO) to perform a study that would compare the relative costs of procedures performed in ASCs and similar procedures performed in hospitals on an outpatient basis.  The MMA further directed the GAO to prepare recommendations as to the "appropriateness," for the purpose of calculating payment rates under the prospective payment system for procedures performed in ASCs, of:  (1) using the same classification system for procedures performed in hospital outpatient departments also for procedures performed in ASCs; (2) using the same "relative weights" (that is, a scale of the relative costliness of these procedures) applicable to hospital outpatient procedures for ASC procedures; (3) using a uniform discount percentage for all procedures to account for the fact that procedures performed in ASCs are generally less costly than procedures performed in hospital outpatient departments; (4) alternatively, varying the relative weights for various procedures to reflect variations in the costliness of those procedures as performed in ASCs; and (5) using geographic adjustments for the resulting payment rates.  MMA, § 626(d).

- 4 -

The MMA further directed the Secretary to take the GAO's study into account, and to institute a revised ASC payment system that would be "designed to result in the same aggregate amount of expenditures" for procedures performed in ASCs as Medicare would have incurred if the prior system had remained in effect. MMA, § 626(b)(2). The Act further established that Medicare would pay a beneficiary (or his assignee) an amount equal to 80% of the lesser of the actual charge, or the amount established in this revised system, for a qualifying procedure performed in an ASC. MMA, § 626(c).

The MMA explicitly provided that the revised ASC payment system resulting from these procedures will not be subject to administrative or judicial review: "There shall be no administrative or judicial review under section 1395ff of this title [42 U.S.C. § 1395ff], section 1395oo of this title [42 U.S.C. § 1395oo], or otherwise, of the classification system, the relative weights, payment amounts, and the geographic adjustment factor, if any, under this subparagraph." 42 U.S.C. § 1395*l*(i)(2)(D)(v) (added by MMA, § 626(b)).

Because the GAO was not timely in its submission of its recommendations regarding ASC payments, and because the MMA imposed a statutory deadline of January 1, 2008 for the implementation of the revised ASC payment system, the Secretary published a proposed regulation for that system in advance of the GAO report. *See* 72 Fed. Reg. 42,470, 42,474-475 (Aug. 2, 2007). The Secretary, however, received the GAO recommendations in advance of his publication of the final rule, and he evaluated the GAO's recommendations in the course of his deliberations concerning the content of that final rule. *See id.* In accordance with the GAO's recommendations, the Secretary determined that he would apply the same classification system and the same relative weights for ASCs as were already in place for hospital outpatient surgical

procedures.  *See* 42 C.F.R. § 416.167(b); *see also* 72 Fed. Reg. at 42,491.  He further determined

that, in general, he would apply a uniform conversion factor to account for the lower costs of

ASC procedures as compared to hospital outpatient procedures.  *See* 42 C.F.R. § 416.171(a); *see*

*also* 72 Fed. Reg. at 42,492.  He also determined, however, that he would vary the relative

weights for certain procedures, namely procedures involving the implantation of certain costly

devices, to reflect the fact that the cost savings realized by ASCs for such procedures are not as

great as those realized for other procedures.  *See* 42 C.F.R. § 416.171(b); 72 Fed. Reg. at 42,503.

He further determined that he would apply a geographic adjustment factors to reflect differences

in wages in various localities.  *See* 42 C.F.R. § 416.172; 72 Fed. Reg. at 42,517.  Last, the

Secretary calculated the factor that he deemed necessary to include in his calculations to ensure

that the resulting payments for ASC procedures would remain budget-neutral.  *See* 42 C.F.R.

§ 416.171(e); 72 Fed. Reg. at 42,522.  On the basis of each of these factors, the Secretary

prepared tables reflecting the resulting payment amounts for each of the procedures approved for

performance in an ASC.  72 Fed. Reg. at 42,549.  These calculations were subject to refinement

by reference to more recent data.  The Secretary accordingly simultaneously proposed a rule

addressing the ASC payment rates applicable for the year 2008, and three months later issued a

final rule establishing the tables for payments for ASC procedures in that year.  *See* 72 Fed. Reg.

66,580, 66,934 (Nov. 27, 2007).

    The plaintiff in this case is the Council for Urological Interests.  It is an association

consisting of companies that provide lithotripsy services to hospitals and also, apparently, to

ASCs.  (Compl., ¶ 2.)  (Lithotripsy is a procedure for the treatment of kidney stones.  Compl.,

¶ 7.)  Its membership does not include ASCs.  (Compl., ¶¶ 2, 66.)  CUI asserts that the revised

ASC payment system does not accurately reflect the costs of lithotripsy performed in ASCs, and that the Secretary should instead have developed a system that would have resulted in the calculation of a greater payment amount for lithotripsy.  (Compl., ¶¶ 64, 72.)  CUI asserts that the Secretary violated the Administrative Procedure Act (APA) in his promulgation of the revised ASC payment system by arbitrarily limiting the payment amounts for lithotripsy; by arbitrarily departing from the recommendations of the GAO report; by issuing a proposed rule before the GAO submitted its report; by declining to reopen the comment period after the GAO issued that report; and by arbitrarily calculating the conversion factor needed for ASC payments to remain budget-neutral.  CUI also asserts that the MMA violates the anti-delegation doctrine under Article I of the Constitution.

The complaint does not allege that any of these claims have been presented by a Medicare Part B beneficiary, or the proper assignee of such a beneficiary, in the administrative process.

**Argument**

**I.    This Court Lacks Jurisdiction over CUI's Claims, because Congress Has Precluded Judicial Review**

There is a simple and dispositive barrier to judicial review over CUI's claims here.  The Medicare Act expressly precludes review of these claims in any forum: "There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of the classification system, the relative weights, payment amounts, and the geographic adjustment factor, if any, under this subparagraph."  42 U.S.C. § 1395*l*(i)(2)(D)(v).  CUI seeks to revisit the relative weight attributed to lithotripsy, and the payment amount that the Secretary has assigned for lithotripsy.  This is precisely the sort of review that the Medicare Act

forbids this Court from performing.  The express language of the Medicare Act demonstrates Congress's intent to preclude review over these claims, and accordingly this Court must defer to Congress's instructions.

Similarly specific language in the Medicare Act has been held to preclude judicial review over claims similar to those presented by CUI here.  For example, 42 U.S.C. § 1395w-4(i)(1)(B) declares that "there shall be no administrative or judicial review . . . of the determination of relative values and relative value units."  This Court has concluded that this language "could not be a more clear prohibition of judicial review."  *American Soc'y of Dermatology v. Shalala*, 962 F. Supp. 141, 145-46 (D.D.C. 1996), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997); *see also American Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 452 (7th Cir. 2002).  In the same vein, the Tenth Circuit has held that language in the Medicare Act stating that "[t]here shall be no administrative or judicial review . . . of the determination of conversion factors" "clearly indicates Congress' intent to preclude administrative and judicial review of the manner in which the conversion factor is calculated by the Secretary."  *Painter v. Shalala*, 97 F.3d 1351, 1356 (10th Cir. 1996) (quoting 42 U.S.C. § 1395w-4(i)(1)(C).  Similarly to *American Society of Dermatology* and to *Painter*, Congress specified that there shall be administrative or judicial review, under any means, of the determinations underlying the establishment of the revised ASC payment system.  The fact that Congress employed similarly precise language here leaves no doubt that it intended to preclude review of the revised ASC payment system.  Congress's explicit instructions require the dismissal of CUI's complaint.

CUI apparently attempts to avoid the explicit statutory preclusion of judicial review by asserting, as a mere *ipse dixit*, that it does not seek to challenge the "relevant weight" or the

- 8 -

"conversion factor" for lithotripsy. (Compl., ¶ 55.) But it is perfectly plain that CUI seeks a review of, among other things, the "classification system" and the "relative weights" that led to the calculation of the "payment amounts" available for lithotripsy. Review of each of these items, of course, is prohibited under 42 U.S.C. § 1395*l*(i)(2)(D)(v). It is of no moment that CUI might cast its claim as a systematic challenge to the regulations implementing the revised ASC payment system, rather than to any particular calculation made under that system. A successful challenge to the regulations would overturn the Secretary's determinations of the classification system, relative weights, and payment amounts under the revised ASC payment system. Congress plainly barred any such challenge. *See American Soc'y of Cataract & Refractive Surgery*, 279 F.3d at 453 (barring challenge to validity of regulation that codified Secretary's determinations of "relative values" and "relative value units," review of which was statutorily prohibited); *see also Painter*, 97 F.3d at 1355-56 (bar on review of conversion factor also bars any review of elements leading to calculation of conversion factor). In other words, the relief that CUI seeks – an order enjoining the application of the final rule establishing the revised ASC payment system – would by necessity result in different payment amounts not only for the lithotripsy procedures about which CUI complains, but also (due to the statute's budget neutrality requirement) for every procedure performed in an ASC. CUI's claims fall squarely within the express prohibition on judicial review.

Although the explicit language of the statute is, of course, dispositive, Congress's intent to preclude judicial review is also evident from the purpose of the statute and the statutory scheme. *See Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 673 n. 4 (1986) ("the presumption favoring judicial review of administrative action may be overcome by

inferences of intent drawn from the statutory scheme as a whole"); *see also Block v. Community Nutrition Inst.*, 467 U.S. 340, 349-51 (1984) (legislative intent to preclude judicial review can be shown through specific statutory language, specific legislative history, or the detail of the legislative scheme).  First, Congress imposed a statutory deadline for the date by which the revised ASC payment system was to be in place.  MMA, § 626(b)(2).  That system, and the resulting annual schedules of payment amounts for various procedures performed in ASCs, would be threatened if courts were permitted to revisit the calculation of payments under that system.  *See American Soc'y of Cataract & Refractive Surgery*, 279 F.3d at 454 (statutory deadline for establishing fee schedules supports inference that Congress intended to preclude review of those schedules and of the factors used to calculate them).

Second, the budget neutrality requirement that Congress imposed on the revised ASC payment system demonstrates its intent to preclude judicial review, because "judicially mandated changes in one payment rate would affect the aggregate impact of the Secretary's decisions by requiring offsets elsewhere, and thereby interfere with the Secretary's ability to ensure budget neutrality in each fiscal year."  *Amgen, Inc. v. Smith*, 357 F.3d 103, 112 (D.C. Cir. 2004) (discussing budget neutrality requirement under 42 U.S.C. § 1395*l*(t)(2)(E) for the outpatient prospective payment system); *see also American Soc'y of Cataract & Refractive Surgery*, 279 F.3d at 454 ("to ensure finality so that the Secretary can make any necessary budget neutrality adjustments, claims such as petitioners' claim must be precluded from judicial review").  In the same manner that Congress recognized that judicial review would be incompatible with its requirement that the allocation of payments in the outpatient prospective payment system must be budget neutral, so too Congress recognized that judicial review would not be appropriate for

the revised ASC payment system.  Indeed, given that Congress specifically contemplated that the revised ASC payment system would be modeled after the outpatient prospective payment system, and that both systems must follow principles of budget neutrality, it would have been highly anomalous for Congress to exclude one system from judicial review but not the other.

In sum, Congress explicitly precluded review over CUI's claims against the validity of the revised ASC payment system.  Even if there were any doubt as to the explicit statutory language, the statutory scheme makes clear that Congress intended that there be no review of the system.  CUI's claims must therefore be dismissed for lack of jurisdiction.

## II.    This Court Lacks Jurisdiction over CUI's Claims, because CUI Has Not Presented Them Administratively

CUI faces a second jurisdictional hurdle, which it also is unable to clear.  If administrative and judicial review were otherwise available, the Medicare Act would require CUI to present its claim administratively before proceeding to federal court.[1]  As noted above, a Medicare Part B claimant may challenge only a "final decision" of the Secretary with respect to a claim for Medicare payment, and federal question jurisdiction is otherwise unavailable over such claims.  42 U.S.C. §§ 1395i,  1395ff(b)(1)(A).  In order to be deemed to have received a "final decision" of the Secretary potentially subject to judicial review, a Medicare claimant must first present a claim to a contractor for an initial determination, and ordinarily "all aspects" of a "present or future claim" must then be "channeled" through this process before a challenge to the

---

[1]  CUI is faced with a jurisdictional dilemma.  Either (as plainly is the case) Section 1395*l*(i)(2)(D)(v) applies here, in which case Congress has entirely precluded this Court from exercising jurisdiction over CUI's claims, or that statute does not apply, in which case Congress has permitted this Court to hear CUI's claims only after they have been presented administratively, which they have not.

Secretary's policies may be brought in district court. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000). This presentment requirement "demands the channeling of virtually all legal attacks through the agency" before a claimant may seek judicial review of a claim arising under the Medicare Act. *See Illinois Council*, 529 U.S. at 13-14.

CUI's claims plainly arise under the Medicare Act, as it seeks a calculation of the payment rate for lithotripsy services that is more to the liking of its member corporations. *See, e.g., Puerto Rican Ass'n of Physical Medicine & Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008); *American Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 815-16 (D.C. Cir. 2005). CUI fails to identify, however, the filing of any Medicare Part B claim for payment that raised the issues it now intends to assert in federal court. Indeed, CUI concedes that neither it not its members are "providers" or "suppliers" of medical services for whom an administrative claim is available. (Compl., ¶ 66.) Its failure to present its claims administratively precludes it from seeking review in this Court.

CUI apparently intends to rely on the exception to the presentment requirement for cases where preclusion "would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 19. This narrow exception does not apply here. The fact that neither CUI nor its members could themselves pursue a Medicare Part B claim administratively is of no moment, given that this case involves medical services rendered by ASCs, and that the ASCs, as "suppliers" under Part B, certainly could present such claims. *See American Chiropractic Ass'n*, 431 F.3d at 817 (chiropractors' claims not completely precluded where patients could appeal denials).

CUI alleges that ASCs lack the motive to challenge the payment rate for lithotripsy. This claim is belied by the fact that it is the ASCs, and not CUI or its member corporations, who are the recipients of payments under Medicare Part B for lithotripsy, or for other services under the revised ASC payment system. *See* 72 Fed. Reg. 42,470, 42,473 (Aug. 2, 2007). CUI's allegation is further belied by the fact that ASCs were active participants in the notice-and-comment process regarding the calculation of payment rates for lithotripsy. *See* Compl., ¶ 24; *see also* 72 Fed. Reg. 66,580, 66,844 (Nov. 27, 2007) (discussing comments from ASCs regarding lithotripsy payment rates); 72 Fed. Reg. at 42,491 (discussing comments from ASCs on methodology of the revised ASC payment system). Such active participation demonstrates the ASCs' motive to pursue a challenge to the revised ASC payment system, if one were viable. *See National Athletic Trainers Ass'n v. U.S. Dep't of Health & Human Servs.*, 455 F.3d 500, 507 (5th Cir. 2006) (comments from physicians in rulemaking process demonstrated their incentive to pursue administrative claims for reimbursement).

In any event, the mere assertion that some other parties may be disinclined to pursue an administrative claim does not show that the channeling requirement amounts to a "complete preclusion of judicial review," as would be required to assume that the Medicare Act would not apply and that general federal question jurisdiction under 28 U.S.C. § 1331 would be available. *Illinois Council*, 529 U.S. at 22-23; *see American Chiropractic Ass'n*, 431 F.3d at 816.[2]  Because

---

[2] CUI may seek to rely on *American Lithotripsy Society v. Thompson*, 215 F. Supp. 2d 23, 30 (D.D.C. 2002), in which this Court allowed chiropractors to bring a claim, without first presenting the claim administratively, that challenged a rule allowing reimbursement for non-chiropractors. This Court held that Medicare Part B enrollees lacked the incentive to bring that claim, and as a practical matter administrative review was precluded. In this case, the interests of ASCs and of CUI's member corporations are aligned; both would prefer that Medicare increase payment amounts for lithotripsy services. In any event, this Court's discussion predates

CUI has failed to present its claims administratively, and because no exception could apply here to the rule that such a failure is a barrier to judicial review, this Court lacks jurisdiction over CUI's claims.

### III.    This Court Lacks Jurisdiction over CUI's Claims, because CUI Lacks Standing to Bring Them

CUI faces, and cannot surpass, a third jurisdictional hurdle for its claims; CUI and its member corporations lack standing to bring these claims.  CUI seeks to challenge the Secretary's calculation of payment amounts for lithotripsy services under the revised ASC payment system. However, neither CUI nor its members receive payment from Medicare for those lithotripsy services; instead, ASCs do.  (*See* Compl., ¶¶ 55, 66.)  CUI apparently assumes (but nowhere in its complaint does it allege) that, if it succeeds in that lawsuit, it and its members would benefit when ASCs share a portion of the potentially increased Medicare payments for those services. Because this assumption turns on a prediction of actions to be taken by third parties (the ASCs), rather than actions by the Secretary, CUI lacks standing to bring these claims.

"Under Article III, § 2, of the Constitution, the federal courts have jurisdiction over [a] dispute . . . only if it is a 'case' or 'controversy.'"  *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "No principle is more fundamental to the judiciary's proper role in our system of government

---

the D.C. Circuit's decision in *American Chiropractic Ass'n* (and, in fact, relied on the district court's jurisdictional holding in that case, which the court of appeals reversed).  After the D.C. Circuit's decision, it is clear that the exception permitting federal-question jurisdiction over Medicare Act claims applies only where, as a categorical matter for all persons affected by a particular statute, the barriers to an administrative claim are so severe that they amount as a practical matter to a complete preclusion of all judicial review.  *See, e.g., Triad at Jeffersonville I, LLC v. Leavitt*, — F. Supp. 2d —, 2008 WL 1777404, at *9 (D.D.C. Apr. 21, 2008); *Atlantic Urological Assocs. v. Leavitt*, — F. Supp. 2d  —, 2008 WL 1931443, at * (D.D.C. May 5, 2008). CUI does not attempt to meet this exacting standard.

than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."

*Id.* Three requirements must be met to satisfy the "irreducible constitutional minimum of

standing." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). "First and

foremost, there must be alleged (and ultimately proved) an 'injury in fact' — a harm suffered by

the plaintiff that is 'concrete' and 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.*

at 103 (quoting in part *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Second, there must

be causation — a fairly traceable connection between the plaintiff's injury and the complained-

of conduct of the defendant . . . . And third, there must be redressability — a likelihood that the

requested relief will redress the alleged injury." *Id.* "This triad of injury in fact, causation, and

redressability constitutes the core of Article III's case-or-controversy requirement, and the party

invoking federal jurisdiction bears the burden of establishing its existence." *Id.* "[A] deficiency

on any one of the three prongs suffices to defeat standing." *U.S. Ecology, Inc. v. United States*

*Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

CUI's potential benefit from this lawsuit turns on the actions of third parties – that is, the

potential decision of ASCs to pay CUI's members more for lithotripsy services – and it is

entirely speculative that ASCs will do so. Accordingly, CUI cannot demonstrate either that its

injury is fairly traceable to the Secretary's conduct, or that a favorable decision would be likely

to redress its injury. *See Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489

F.3d 1267, 1275-76 (D.C. Cir. 2007) (physicians lacked standing to challenge HHS rule

establishing limited limiting "safe harbor" for payments for services rendered on referral to in-

house providers; possibility of increase in payments by the providers to the physicians if rule

were overturned was speculative); *see also Nat'l Wrestling Coaches Ass'n v. Dep't of Education*,

366 F.3d 930, 938 (D.C. Cir. 2004) (where elements of causation and redressability "hinge on the independent choices of the regulated third part[ies]," plaintiff must "adduce facts showing that these choices have been or will be made in such manner" as to satisfy these elements). Because CUI's claim of an injury and its speculation that it injury might be redressed turns on assumptions regarding actions that will be undertaken by third parties, it has failed to allege adequately its standing to pursue this action. *See Atlantic Urological Assocs.*, — F. Supp. —, 2008 WL 1931443, at *7 & n. 9.

**IV.    The Constitutional Claim Is Meritless**

Unable to clear the three jurisdictional hurdles to its suit, CUI attempts to sidestep them by recasting its claim as a constitutional one. It asserts that Congress violated the anti-delegation doctrine under Article I of the Constitution by delegating legislative power to the Secretary. Unfortunately for CUI, the jurisdictional hurdles are wide enough to encompass this claim as well. The Medicare Act, for example, requires any claim arising under it to be presented administratively, even if the claim is cast in constitutional terms. *See Heckler v. Ringer*, 466 U.S. 602, 615 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975). In any event, CUI's constitutional claim borders on the frivolous. The MMA easily provided an intelligible principle for the Secretary to use in formulating the revised ASC payment system. The Constitution requires no more.

As an abstract matter, Congress is prohibited from delegating away its legislative power. The standard whether a prohibited delegation has occurred, however, is extraordinarily lenient; Congress acts within its powers so long as it provides "an intelligible principle to which the person or body authorized to act is directed to conform." *Whitman v. American Trucking Ass'ns*,

- 16 -

531 U.S. 457, 472 (2001). The Supreme Court has strongly suggested that the anti-delegation

doctrine is not justiciable: "We have almost never felt qualified to second-guess Congress

regarding the permissible degree of policy judgment that can be left to those executing or

applying the law." *Id.* at 474-75.

In light of this principle, it is not surprising that the courts have upheld statutes that direct

agencies to act with very broad language, such as directions to act in the "public interest," or in a

way that is "fair and equitable." *American Trucking*, 531 U.S. at 473-75 (collecting examples);

*see also Michigan Gambling Opp. v. Kempthorne*, 525 F.3d 23, 30-31 (D.C. Cir. 2008). The

Court has emphasized that it will find the necessary "intelligible principle," not only in the

relevant statutory text, but also in content derived from the "purpose of the Act, its factual

background, and the statutory context." *American Trucking*, 531 U.S. at 474-75. It has further

emphasized that "the degree of agency discretion that is acceptable varies accordingly to the

scope of the power congressionally conferred." *Id.* at 475; *see also Michigan Gambling Opp.*,

525 F.3d at 32-33. In contrast to a virtually limitless delegation of power to regulate the entire

economy that led to one of the only two successful invocations of the anti-delegation doctrine in

the Court's history, *see A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935),

the Court has indicated that Congress would not need to specify any standard at all for the

manner in which the EPA would define "country elevators." *American Trucking*, 531 U.S. at

475.

This case is far closer to the "country elevators" example than it is to *Schechter*. The

allocation of a limited fund of money among claimants for Medicare services performed in ASCs

does not present the sort of "sweeping regulatory regime" that might raise anti-delegation

concerns.  *See American Trucking*, 531 U.S. at 475.  But even if the doctrine did apply, the

MMA easily provides the intelligible principle needed to satisfy the anti-delegation doctrine.

The revised ASC payment system is part of Medicare's prospective payment system.  The

purpose of the prospective payment system, of course, it to establish fair rates of payment for

medical services, without distorting the incentives of providers or suppliers to furnish those

services.  This purpose easily provides an intelligible principle to guide the Secretary in the

exercise of his discretion.  Furthermore, the MMA directs the GAO to report on, and the

Secretary to consider, the "appropriateness" of various factors, such as the use of categories and

relative weights already in use under the outpatient prospective payment system.  *See* MMA,

§ 626(b), (d).  The Act's specification of these factors for the Secretary's review certainly does

not amount to the sort of standardless delegation that might raise non-delegation concerns.

     In sum, the MMA obviously does not present a case to revive the virtually moribund anti-

delegation doctrine.  CUI apparently has pled this constitutional claim solely in an effort to

circumvent the jurisdictional bars to its statutory claims, and this claim borders on the frivolous.

## <u>Conclusion</u>

For the foregoing reasons, the complaint should be dismissed for lack of subject matter

jurisdiction.  In the alternative, the complaint should be dismissed for failure to state a claim.

Dated: June 16, 2008                              Respectfully submitted,

Of Counsel:                                       GREGORY G. KATSAS
                                                  Acting Assistant Attorney General
THOMAS R. BARKER
Acting General Counsel                            JEFFREY A. TAYLOR
                                                  United States Attorney
JANICE HOFFMAN
Associate General Counsel
                                                   ___/s/ Joel McElvain_____
MARK D. POLSTON                                   SHEILA M. LIEBER, Deputy Director
Deputy Associate General                          JOEL McELVAIN, Attorney, D.C. Bar # 448431
     Counsel for Litigation                       United States Department of Justice
                                                  Civil Division, Federal Programs Branch
JOCELYN BEER                                      20 Massachusetts Ave., NW, Room 7130
Attorney                                          Washington, D.C. 20001
Office of the General Counsel                     Telephone:     (202) 514-2988
U.S. Department of Health                         Fax:           (202) 616-8202
     and Human Services                           Email:         Joel.L.McElvain@usdoj.gov

                                                  *Attorneys for Defendants*

- 19 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **COUNCIL FOR UROLOGICAL INTERESTS**, | ) ) ) | |
| **Plaintiff**, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-02343-HHK |
| **MICHAEL O. LEAVITT**, Secretary of the Department of Health and Human Services, and **UNITED STATES OF AMERICA**, | ) ) ) ) | |
| **Defendants.** | ) ) | |

## [PROPOSED] ORDER

Upon consideration of the defendants' motion to dismiss the complaint, and good cause

having been shown, it is hereby

ORDERED that the motion is GRANTED and it is further

ORDERED that the complaint is dismissed for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.


Dated: _____, 2008      _____

HENRY H. KENNEDY, JR.
UNITED STATES DISTRICT JUDGE

Copy To:

Joel McElvain
U.S. Department of Justice
20 Massachusetts Avenue, N.W., Room 7130
Washington, D.C.  20001
Attorney for Defendants

Gordon A. Coffee
Winston & Strawn
1700 K Street, N.W.
Washington, D.C.  20006
Attorney for Plaintiff