IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **COUNCIL FOR UROLOGICAL INTERESTS**,<br><br>**Plaintiff**,<br><br>v.<br><br>**MICHAEL O. LEAVITT**, Secretary of the Department of Health and Human Services, and **UNITED STATES OF AMERICA**,<br><br>**Defendants.** | ) | Case No. 1:07-cv-02343-HHK |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

In its complaint, the Council for Urological Interests (CUI) sought the invalidation of the Secretary's regulation that established payment rates for procedures performed in ambulatory surgical centers (ASCs). It asserted that the Secretary should have instead promulgated a regulation that established higher rates of payment for one particular form of procedure performed in ASCs, lithotripsy. The defendants demonstrated in their initial memorandum in support of their motion to dismiss that CUI's claim is subject to three fatal jurisdictional defects. First, Congress has expressly precluded judicial review of the sort of claim that CUI seeks to bring. Second, CUI has failed to comply with the Medicare Act's requirement that its claim first be presented administratively. Third, CUI lacks standing, as the possibility that its members' alleged injuries would be redressed by a favorable decision is entirely speculative. The defendants also showed that the constitutional claim that CUI seeks to bring – an alleged violation of the anti-delegation doctrine – is entirely meritless. CUI fails to respond adequately to any of these points. It instead recites a series of non sequiturs and distinctions without a

difference. The complaint accordingly should be dismissed for lack of jurisdiction or, alternatively, for failure to state a claim.

## Argument

### I. This Court Lacks Jurisdiction over CUI's Claims, because Congress Has Precluded Judicial Review

In their initial memorandum (at pages 7 to 11), the defendants showed that Congress had expressly precluded judicial review over CUI's claims here. The statute that authorized the Secretary to issue regulations establishing payment rates for ASC procedures also precluded review of the Secretary's methodology in establishing those payment rates: "There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of the classification system, the relative weights, payment amounts, and the geographic adjustment factor, if any, under this subparagraph." 42 U.S.C. § 1395*l*(i)(2)(D)(v). Because the relief that CUI seeks would encompass a review of these prohibited areas, this Court lacks jurisdiction over the complaint.

CUI argues in opposition to the motion to dismiss that it has disavowed a challenge to any of the four specific factors mentioned in Section 1395*l*, and that therefore jurisdiction remains in this Court. (Opposition at 5.) But CUI cannot avoid the statutory preclusion of review simply by creative pleading or by choice of words. The complaint seeks a review, and the invalidation, of the procedures that the Secretary used to issue a regulation that determined the classification system applicable to various procedures performed in ASCs. The complaint alleges that the Secretary improperly limited the payment amounts available for lithotripsy performed in ASCs. (Compl., ¶¶ 78-79.) The complaint further challenges the Secretary's use of a classification system that led him to establish a different conversion factor for some device-

intensive procedures, but not for lithotripsy. (*E.g.*, Compl., ¶ 78.) In short, this Court could not reach the result that CUI seeks in this litigation without reviewing and overturning the Secretary's establishment of payment amounts, relative weights, and the classification system for ASC procedures. Because the complaint necessarily implicates such a prohibited review, its challenge to the Secretary's regulation is subject to the statutory preclusion of judicial review under Section 1395*l*. *See Painter v. Shalala*, 97 F.3d 1351, 1355-56 (10th Cir. 1996).

CUI next argues that the plain language of Section 1395*l* should not apply to its complaint because it seeks generally to challenge a regulation, rather than to overturn a particular determination made under the regulation. (Opposition at 7.) It cites *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991), as support for this argument. But *Haitian Refugee Center* turned on the specific language of the jurisdictional provision at issue there, and is of limited relevance to the Medicare Act's review-limiting provisions. The relevant provision (section 210(e) of the Immigration and Nationality Act) barred judicial review "of a determination respecting an application" for special agricultural worker status. The Court held that that language did not bar review of a case that did not challenge the result of a particular application. *Id.* at 492. There is no similar language in Section 1395*l* that would limit the preclusion of review to individual applications. Rather, the preclusive language of Section 1395*l* generally limits any review that would touch upon payment amounts, relative weights, classification systems, or geographic adjustment factors. *See, e.g., American Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 453-54 (7th Cir. 2002) (noting inapplicability of *Haitian Refugee Center* to Medicare Act provisions). Thus, whether CUI phrases its claim as

a challenge to a particular payment determination or to the system that produces such a determination is immaterial; this Court lacks jurisdiction in either event.[1]

CUI also seeks to distinguish precedents under the Medicare Act by arguing that the preclusive language of Section 1395*l* is narrower than the language of the statutes at issue in other cases. (Opposition at 8-9, citing *Painter* and *American Soc'y of Dermatology v. Shalala*, 962 F. Supp. 141 (D.D.C. 1996), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997)). In particular, CUI argues that other statutes were phrased to preclude review of certain "determinations," and that, because Section 1395*l* does not limit its preclusive effect to "determinations," it must be read to be narrower than those other statutes. CUI's reasoning is exactly backwards. If there were any material difference between Section 1395*l* and the statutes at issue in cases such as *Painter* or *American Soc'y of Dermatology*, the absence of a reference to particular "determinations" in Section 1395*l* would even *more* clearly establish that it precludes reviews both of the regulation and of its particular applications. *See Santa Cruz County v. Leavitt*, 2008 WL 686831, at *6 (N.D. Cal. Mar. 11, 2008) (noting that statute barring review of "establishment" of certain factors had even broader preclusive effect than statute barring review of "determinations"). Thus, here as in *Painter*, the statute applies to "preclude administrative and judicial review of the manner in which [the prohibited factors are] calculated." 97 F.3d at 1356.[2]

---

[1] CUI's reliance (Opposition at 11) on *Universal Health Servs. v. Sullivan*, 770 F. Supp. 704 (D.D.C. 1991), is similarly misplaced. The statute at issue there specifically limited the preclusion of review to appeals from classification decisions of an administrative board. *Id.* at 710. The court relied on that specific limitation to hold that a broader challenge to a regulation was not precluded.

[2] The apparent illogicality of CUI's attempt to distinguish Section 1395*l*'s language from that of other review-limiting statutes perhaps explains why CUI cited to this language in the Tenth Circuit's opinion, and not to the relevant statutory language itself, in claiming that the

Although the explicit language of the statute is, of course, dispositive, the defendants also showed in their initial memorandum that two additional features of the statutory scheme further demonstrated Congress' intent to preclude review of CUI's claims. First, the Medicare Modernization Act imposed a statutory deadline for the Secretary to establish a revised ASC payment system. Second, the Act dictated that that system be budget neutral. As neither direction could be fulfilled if the revised ASC payment system were to be subject to judicial second-guessing, it is apparent that Congress intended that no such review should occur. *See, e.g.*, *American Soc'y of Cataract & Refractive Surgery*, 279 F.3d at 454. In response to the first point, CUI argues (Opposition at 12 n.4) that the Secretary often ignores statutory deadlines. This is simply non-responsive; whether or not the *Secretary* has violated a statutory deadline in other circumstances has nothing whatsoever to do with the indications of the intent of *Congress* that can be found from its establishment of the deadline. In response to the second point, CUI argues that it has challenged the Secretary's budget-neutrality calculations. This, also, is simply a non sequitur as to the issue of whether Congress intended to allow such challenges to go forward. *See Painter*, 97 F.3d at 1356 (denying review of challenge to budget-neutrality calculations). Congress plainly did not so intend, as evidenced both by the express language of Section 1395*l* and by the other powerful indications of legislative intent. The Medicare Act thus has precluded review of CUI's claims, and the complaint should be dismissed for lack of jurisdiction.

---

statute at issue there was supposedly more broadly worded than Section 1395*l*. (Opposition at 9.)

## II. This Court Lacks Jurisdiction over CUI's Claims, because CUI Has Not Presented Them Administratively

The defendants showed in their initial memorandum (at pages 11 to 14) that this Court lacks jurisdiction for a second reason; CUI has not presented its claims administratively, as would be required (if jurisdiction were otherwise available) under the Medicare Act. A Medicare Part B claimant may challenge only a "final decision" of the Secretary with respect to a claim for Medicare payment, and federal question jurisdiction is otherwise unavailable over such claims. 42 U.S.C. §§ 1395i, 1395ff(b)(1)(A). The statute "demands the channeling of virtually all legal attacks through the agency" before a claimant may seek judicial review of a claim arising under the Medicare Act. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13-14 (2000).

CUI does not dispute that its claims arise under the Medicare Act, or that its claims would ordinarily be subject to the Act's presentment requirement. It argues instead (Opposition at 12) that its claims fall within the narrow exception for cases where preclusion "would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 19. It asserts that the ASCs (who are "suppliers" under Medicare Part B and thus, unlike CUI or its members, would be the proper parties to pursue an administrative claim for Medicare payment) lack the incentive to challenge the revised ASC payment system. But this assertion is simply immaterial; for the narrow "no-review" exception to the presentment requirement to apply, "[t]he difficulties must be severe enough to render judicial review unavailable as a practical matter." *American Chiropractic Ass'n*, 431 F.3d 812, 815 (D.C. Cir.

2005).[3] The mere possibility that the proper party (that is, the party that would actually receive payment on a claim from Medicare) might not wish to pursue a claim does not vest other parties with the right to proceed directly to federal court, in contravention of the Medicare Act's presentment requirement. *See id.*; *see also Altantic Urological Assocs. v. Leavitt*, 549 F. Supp. 2d 20, 32 (D.D.C. 2008) (individual hardship insufficient to show total deprivation of administrative review).

In any event, CUI's assertion that the ASCs lack a motive to seek additional Medicare payment lacks any foundation. The ASCs are the parties that receive payment from Medicare under the Secretary's regulation (Compl., ¶¶ 55-56), and thus they have a direct financial interest in seeking payment amounts that they believe would reflect the costs of various procedures. CUI asserts – without citation to the complaint or any other evidence – that ASCs are paid a fixed fee, and thus would lack any financial motive in the particulars of the payment system.[4] But even if this assertion were grounded in anything other than representations of counsel, it would be immaterial. Nothing would prevent the ASCs from paying CUI's members more for lithotripsy services, and seeking payment from Medicare for that additional service, if the alternative (as

---

[3] CUI attempts to distinguish *American Chiropractic Association* by arguing that the chiropractors in that case could have received an assignment of the right to pursue an administrative claim from their patients, while CUI's members could not be assigned the ASCs right to pursue payment. CUI fails to explain why this distinction would be meaningful. It is difficult to understand how a party (such as a corporation that is a member of CUI) that even more clearly falls outside the scheme of Medicare reimbursement would have more of a right to proceed to federal court on a Medicare Act claim than would the chiropractors at issue in *American Chiropractic Association*.

[4] This assertion is difficult to square with the obvious fact that the ASCs felt sufficiently invested in the Secretary's regulation to participate in the notice-and-comment process for that regulation, as the defendants showed in their initial memorandum.

CUI, again without factual support, suggests) would be that CUI's members would not perform services in the ASCs.

In short, this Court need not check its common sense at the door when reviewing CUI's jurisdictional allegations. The fact that the ASCs may not have filed administrative claims or have filed suit challenging the revised ASC payment system is not due to the lack of a financial incentive to bring such claims (and is certainly not due to any barrier that could amount to a complete divestment of the availability of review). That no such claims have been filed is more probably attributable to the ASCs' recognition that such claims would be meritless.

**III. This Court Lacks Jurisdiction over CUI's Claims, because CUI Lacks Standing to Bring Them**

The defendants showed in their initial memorandum (at pages 14 to 16) that this Court lacks jurisdiction over CUI's claims for a third reason; CUI and its member corporations lack standing to bring these claims. Any benefit that CUI or its members might gain from this suit would turn, not on actions of the Secretary, but on the independent decision of the ASCs – the parties that gain payment from Medicare – to share any additional proceeds with CUI's members. As the defendants have shown, where a claim of redressability turns on the independent actions of third parties, in order to show that it has standing, a plaintiff must adduce faces showing that the third parties would act in a manner that would lead to the plaintiff's benefit. *See National Wrestling Coaches Ass'n v. Dep't of Education*, 366 F.3d 930, 938 (D.C. Cir. 2004).

CUI does not even attempt to meet this requirement. It instead argues that its claim does not turn on whether ASCs share money derived from Medicare reimbursement with its member corporations. It alleges that its claim of injury is instead that its members will choose whether to

do business in the first instance with hospitals or with ASCs. This is utterly a distinction without a difference. Whether or not a corporation that provides lithotripsy services will do business with an ASC certainly turns on the amount of payment that the corporation receives from the ASC. No matter how CUI chooses to phrase its allegations of injury and redressability, then, its ability to gain redress for its supposed injury turns on whether ASCs will pay its members more for lithotripsy services. Because that supposed benefit turns on speculation as to the actions of third parties, CUI cannot meet its burden to show that its members' asserted injuries would be likely to be redressed by a favorable decision. Consequently, this Court lacks jurisdiction over CUI's claims. *See Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1275-76 (D.C. Cir. 2007) (speculative possibility that increased payments would be passed on insufficient to establish standing).

## IV. The Constitutional Claim Is Meritless

Finally, the defendants also showed in their initial memorandum (at pages 16 to 18) that CUI's claim of a violation of the anti-delegation doctrine is baseless. Despite acknowledging that it has twice been warned of the frivolity of this claim (Opposition at 18), CUI persists in pursuing it. It should not have done so.

CUI asserts that the anti-delegation doctrine remains viable. It fails to cite to any authority (apart from a 1935 Supreme Court decision, which is essentially moribund for the reasons explained in the defendants' initial memorandum) overturning a statute on this ground. It fails in this regard because there is no such authority. As the defendants have shown, although Congress must provide an "intelligible principle" when it authorizes an agency to act, the courts are willing to draw that principle from virtually any source. *See Whitman v. American Trucking*

*Ass'n*, 531 U.S. 457, 474-75 (2001). Moreover, even this extremely deferential review would not apply – and the anti-delegation doctrine would not have any voice at all – where Congress has delegated power of a limited scope, such as, like here, the power to allocate a limited fund of Medicare payment for ASCs. *See American Trucking*, 531 U.S. at 475.

CUI ignores these points, because it has no possible response to them. It instead asserts that the defendants have not shown an intelligible principle to guide the Secretary's discretion in establishing the revised ASC payment system. But certainly the purpose of the Medicare prospective payment system – to specify payment amounts that are fair, efficient, and predictable, *see, e.g., Methodist Hosp. v. Shalala*, 38 F.3d 1225, 1232-33 (D.C. Cir. 1994) – provides such a principle. Moreover, Section 626 of the Medicare Modernization Act itself specified factors for GAO to report on, and directed the Secretary to consider that report. MMA, § 626(b), (d). The Act thus directly specified factors for the Secretary to take into account. The fact that Congress also directed GAO to perform an intermediary fact-finding role does not change that result.[5]

CUI also asserts, without citation to any authority, that Congress violates the anti-delegation doctrine where it authorizes an agency to act and precludes judicial review of the

---

[5] CUI responds by raising various irrelevant (and baseless) allegations of "taint" in the GAO report. (Opposition at 20-21.) The anti-delegation doctrine argument (if it is viable at all in a case with as limited a delegation as the one at issue in this case) turns on whether Congress specified an intelligible principle *for the Secretary*. By describing the factors for the GAO to report on, and by directing the Secretary to consider that report, Congress informed the Secretary of considerations that it deemed relevant. Any claim that GAO later misperformed its duties is beside the point. In any event, contrary to CUI's insinuations, it is entirely ordinary procedure for GAO to give affected agencies the opportunity to comment on draft reports concerning that agency's activities. *See* Government Accountability Office, GAO's Congressional Protocols, GAO-04-310G at 17 (2004), available at <http://gao.gov/congress.html>.

agency's action. (Opposition at 19.) But the question whether Congress has provided an intelligible principle for the agency, and the question whether Congress intended courts to play a role in reviewing the agency's actions, are logically independent from each other. There accordingly is no heightened standard of "intelligibility" for the principle that Congress lays down in areas where it also has forbidden judicial review. *See United States v. Bozarov*, 974 F.2d 1037, 1041-42 (9th Cir. 1992); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543-44 (1950).

**Conclusion**

For the foregoing reasons, the complaint should be dismissed for lack of subject matter jurisdiction. In the alternative, the complaint should be dismissed for failure to state a claim.

Dated: July 18, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

/s/ Joel McElvain
SHEILA M. LIEBER, Deputy Director
JOEL McELVAIN, Attorney, D.C. Bar # 448431
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7130
Washington, D.C. 20001
Telephone: (202) 514-2988
Fax: (202) 616-8202
Email: Joel.L.McElvain@usdoj.gov

*Attorneys for Defendants*

Of Counsel:

THOMAS R. BARKER
Acting General Counsel

JANICE HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel for Litigation

JOCELYN BEER
Attorney
Office of the General Counsel
U.S. Department of Health and Human Services